UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHANA SANTA MARIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LOYOLA UNIVERSITY OF CHICAGO ) <br> STRITCH SCHOOL OF MEDICINE and THE ) <br> NATIONAL BOARD OF MEDICAL ) <br> EXAMINERS, ) <br> ) <br> Defendants. ) | No. 24 C 1698 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Johana Santa Maria, a former medical student at Loyola University of Chicago Stritch School of Medicine ("Stritch"),[1] sued Stritch and The National Board of Medical Examiners ("NBME," and collectively, "Defendants") for allegedly discriminating against her by dismissing her from medical school and denying her reasonable accommodations when sitting for a critical examination. NBME answered Santa Maria's complaint, and Stritch filed a motion to dismiss. Santa Maria brings federal claims against Stritch, claiming that the school discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (Counts I–IV). She also brings state law claims for breach of an implied-in-fact contract (Count V), intentional infliction of emotional distress ("IIED") (Count VI), and, in the alternative to her

---

[1] Stritch indicates that its proper title is "Loyola University of Chicago," rather than the name Santa Maria uses in her case caption. To simplify the Court's reference to Santa Maria's complaint, the Court continues to use "Stritch" throughout this opinion. However, the Court encourages Santa Maria to amend her complaint to properly name this defendant party.

IIED claim, negligence (Count VII).[2] Stritch argues that Santa Maria's complaint is deficient because it uses "shotgun pleading" and otherwise fails to state a claim. While the Court agrees that Santa Maria has failed to plausibly allege facts giving rise to an IIED or negligence claim, the Court finds that her complaint plausibly pleads her other claims for relief. Accordingly, the Court allows Counts I–V to proceed and dismisses Counts VI and VII without prejudice.

## BACKGROUND[3]

### I. Santa Maria's Arrival and Difficulties at Stritch

Santa Maria is a former medical student at Stritch. Stritch accepted Santa Maria as a student on February 27, 2018, to matriculate in the fall of that year. Santa Maria began her studies in the summer of 2018. Santa Maria "received several grants and scholarships as well as several academic achievement awards over the next several years." Doc. 1 ¶ 20.

Throughout her time as a student at Stritch, Santa Maria suffered from disabilities including Major Depressive Disorder ("MDD"), Post-Traumatic Stress Disorder ("PTSD"), Generalized Anxiety Disorder ("GAD"), and Attention-Deficit Hyperactivity Disorder ("ADHD"). During the course of her studies, Santa Maria was "under the professional care of Dr. Kim Duque, M.D., a board-certified psychiatrist, a Clinical Assistant Professor at Stritch, and the Director of Stritch's Residency Wellness Program." *Id.* ¶ 26. Stritch did not have a formal

---

[2] Santa Maria also filed a complaint alleging violations of the Illinois Human Rights Act with the Illinois Department of Human Rights. She has indicated that she will seek leave from the Court to amend her complaint to include these claims if the Illinois Department of Human Rights issues a right to sue letter.

[3] The Court takes the facts in the background section from Plaintiff Santa Maria's complaint and presumes them to be true for the purpose of resolving Stritch's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

process for a student to request a disability-based modification to its program of study. However, beginning in the fall of 2019 and continuing through the fall of 2021, Santa Maria "requested and received educational modifications including extensions of time to complete exams and excused absences so that [she] could address her medical needs." *Id.* ¶ 30.

## II.     Santa Maria's First Dismissal from Stritch

From late fall of 2020 through the fall 2021 semester, Santa Maria experienced several personal family tragedies. This included "the death of the family matriarch, [her] maternal grandmother, and multiple hospitalizations of [Santa Maria's] mother." *Id.* ¶ 60. These unfortunate events caused Santa Maria's disabilities to affect her personal relationships and academic performance, which in turn led to Santa Maria thrice failing a must-pass pediatrics exam. Stritch dismissed Santa Maria on February 15, 2022, due to poor academic performance.

## III.    Santa Maria's Readmission

Santa Maria appealed her dismissal to the Student Appeal Board ("SAB"), which had the power to reverse her dismissal and reinstate her as a student to Stritch, on April 18, 2022. The SAB acknowledged that Santa Maria had performed well during her first two years at Stritch, and that her family and health issues collectively caused her most recent academic problems. Ultimately, on April 29, 2022, the SAB reversed Santa Maria's dismissal and reinstated her to Stritch. However, the SAB conditioned Santa Maria's readmission on:

>(a)     a mandatory six-month sabbatical during which [Santa Maria] would focus on her mental health and be prohibited from engaging in any Step 1 activities including taking or studying for the Step 1 examination;[4]
>
>(b)     a reevaluation in October of 2022 regarding [Santa Maria's] eligibility to begin studying for the Step 1 examination;

---

[4] The Court discusses the contours of this exam in the section immediately below.

>
> (c) upon returning from her mandatory sabbatical, mandatory monthly meetings with the Associate Dean or Assistant Dean for Student Affairs to monitor [Santa Maria's] academic progression as she prepared for her Step 1 examination;
>
> (d) a requirement that [Santa Maria] work with and obtain instruction from Vera Schalansky, Director for the Academic Center for Excellence ("ACE"), throughout [Santa Maria's] Step 1 preparation;
>
> (e) mandatory psychiatric therapy and counseling with compulsory progress reports provided to the Associate Dean or Assistant Dean for Student Affairs documenting her mental health and, most importantly;
>
> (f) an eight (8) week maximum amount of time to study for her Step 1 exam with the stipulation that if [Santa Maria] fail[ed] her first attempt, which must be completed by the end of April of 2023, she would again be dismissed from Stritch without the opportunity to retake the examination or appeal the dismissal.

*Id.* ¶ 69. In October of 2022, Santa Maria returned to Stritch. Santa Maria enrolled in an elective psychiatric internship, which she passed with honors.

## IV. Step 1 of the United States Medical Licensing Examination

The NBME administers the United States Medical Licensing Examination, which consists of three "Steps" that a medical student must pass before applying for a medical license. Step 1, the only exam relevant to this case, assesses "a student's grasp of scientific concepts." *Id.* ¶ 35. The test consists of several multiple-choice question sections, and the NBME administers it to examinees over the course of two full examination days. Students usually take Step 1 before their final year of medical school.

Medical schools often allow students "three and sometimes four attempts to pass Step 1 before dismissing a student for academic failure." *Id.* ¶ 40. Stritch's standard policy gives its students three opportunities to pass Step 1 before dismissing a student for academic failure. Stritch's Academic Policy Manual mandates that a student who fails Step 1 a second time must

4

"meet with a representative of [ACE] and Office of Student Affairs ('OSA') for mandatory services aimed at determining the best course of study in preparation for the third and final attempt at Step 1." *Id.* ¶ 46; *see also* Doc. 18-1 at 19 ("Students who are not successful on a second attempt will meet with ACE and OSA to determine a study plan for a third attempt."). If Stritch dismisses a student for thrice failing Step 1, the dismissed student retains the right to appeal the dismissal, enjoys certain procedural rights, and is able to "otherwise change enrollment status." Doc. 1 ¶ 47.

## V.     Santa Maria Requests Accommodations From the NBME

In October 2022, Santa Maria requested accommodations from the NBME for additional testing time, a private room for her exam, and access to food and drink. Dr. Duque provided supporting documentation for these requests. On January 10, 2023, the NBME approved Santa Maria's request for access to a snack, water, and a private room to take the test, but denied her extra time to sit for the exam. The NBME also gave Santa Maria a testing permit allowing her to complete both full-day portions of the exam with a fourteen-day break between the two sessions of the exam, with the condition that she take Step 1 between February 1, 2023, and April 30, 2023. Around the same time that Santa Maria made her requests to the NBME, she notified Stritch personnel about the requests.

## VI.    Santa Maria Fails Step 1

Santa Maria experienced anxiety and PTSD prior to taking Step 1. Dr. Duque "attributed [Santa Maria]'s deteriorating condition and renewed onset of PTSD to Stritch's insistence that [she] only be given one chance to pass the Step 1 examination and do so without the modification gra[n]ting [her] extra time." *Id.* ¶ 112. Therefore, Dr. Duque increased Santa Maria's antidepressant dose to aid in reducing acute stress induced symptoms.

Stritch did not help Santa Maria prepare for the exam, as it promised to do so when it reinstated her. Specifically, Stritch failed to provide her with monthly progress meetings with Dean Mendez and study guides, plans, or other tools to assist in her Step 1 preparation. Rather, Stritch suggested during a thirty-minute meeting that Santa Maria, at her own expense, purchase additional Step 1 practice questions. And although Santa Maria emailed Stritch personnel to set up a meeting to discuss the supervised eight-week study period per her readmission conditions, Dean Mendez was not available for several weeks, delaying the meeting.

Because of Stritch's delay in arranging Dean Mendez's meeting with Santa Maria, she was not able to take the first day's examination until late April and was not able to take advantage of the full fourteen-day break. Instead, Santa Maria sat for the second session only three days after completing her first day of testing.

Weeks after sitting for Step 1, Santa Maria received her failing score.

**VII.  Santa Maria's Second Dismissal from Stritch**

On June 14, 2023, at the recommendation of Dr. Duque, Santa Maria emailed Dean Mendez twice to express her "concerns with the way she was treated by Stritch, her continued objections to Stritch's conditions for readmission, and the adverse effects she suffered as a result." *Id.* ¶ 125. Santa Maria received no response. Santa Maria then "filed disability discrimination complaints with the Department of Justice Civil Rights Division on June 21, 2023, and the U.S. Department of Education's Office of Civil Rights on June 23, 2023." *Id.* ¶ 129. On June 24, 2023, Dean Mendez responded to Santa Maria's emails to set up a meeting to "discuss what happened." *Id.* ¶ 130. No such meeting took place, however, and on July 28, 2023, Dean Mendez emailed Santa Maria her dismissal letter informing her that, "due to her

6

failing the Step 1 examination, [her] 'readmission is hereby rescinded under the terms of the April 29, 2022, reinstatement.'" *Id.* ¶ 133. This dismissal was final and not appealable.

When Santa Maria found out about her dismissal, she had already started her fourth and final year of elective courses. Santa Maria was on pace to graduate at the conclusion of her fourth year. At the time of her dismissal, Santa Maria "was complying with all obligations required of her by the Stritch School of Medicine's Academic Policy Manual, as well as all other stipulations imposed upon her readmission to Stritch." *Id.* ¶ 136.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.     Shotgun Pleading**

Stritch first argues that Santa Maria's complaint engages in impermissible "shotgun" pleading. In a "shotgun" pleading, "each count incorporate[s] by reference all preceding

paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010)) (internal quotation marks omitted)). Courts discourage this style of pleading. *Id.* However, "if there is enough clarity to determine what [p]laintiffs seek to hold, the court may decide the motion to dismiss on the basis of whether [p]laintiffs have adequately stated a valid claim, rather than requiring them to re-plead their claims again." *Gaston v. Bd. of Educ.*, No. 17 C 1024, 2017 WL 3234375, at *2 (N.D. Ill. July 31, 2017) (citation omitted) (internal quotation marks omitted).

Stritch argues that Santa Maria's complaint, which "realleges and incorporates each paragraph as stated" with respect to every cause of action, is impermissible shotgun pleading because it fails to enlighten Stritch as to the conduct that forms the basis of each of Santa Maria's claims. Doc. 18 at 6 (quoting Doc. 1 ¶¶ 139, 142, 145, 148, 151, 155, 158). In response, Santa Maria argues that a fair reading of the complaint specifically addresses Stritch's conduct and alleges facts giving rise to each claim. She also notes that she differentiates between Stritch and the NBME's conduct through headings, through which Stritch could identify the relevant conduct giving rise to her claims. *Compare* Doc. 1 at 15 ("Stritch Takes Further Steps to Undermine Plaintiff's Success"), *with* Doc. 1 at 13 ("Plaintiff is Again Denied a Reasonable Modification by the NBME").

The Court disagrees that Santa Maria's complaint fails to put Stritch and the Court on notice of her claims. The fact that Santa Maria separates her claims into digestible counts and clarifies which defendant is allegedly liable for each of them greatly assists its comprehension. Indeed, the fact that Stritch's page-and-a-half worth of arguments with respect to the structure of

8

Santa Maria's complaint precedes nine pages of well-argued challenges to the sufficiency of her allegations demonstrates that Stritch can understand her pleading well enough to respond to it. *See SEC v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021) ("The mere fact that a complaint's counts incorporate by reference each of the preceding factual allegations does not make the complaint an impermissible shotgun pleading, so long as the complaint adequately puts the defendants on notice of the claims against them."). Likewise, the format of Santa Maria's complaint provides no obstacle to the Court's review of her claims. As such, the Court declines to dismiss her entire complaint because of her stylistic decisions and will instead evaluate the sufficiency of her pleading claim-by-claim.

## II.  Discrimination under the ADA and the Rehabilitation Act

Stritch argues that Santa Maria's complaint fails to state a claim for discrimination under either the ADA or the Rehabilitation Act. Aside from some minor differences, these claims are "functionally identical." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). To plead a *prima facie* case of discrimination under these laws, Santa Maria must allege: "(1) that [s]he suffers from a disability as defined by the statutes, (2) that [s]he is qualified to participate in the program in question, and (3) that [s]he was either excluded from participating in or denied the benefit of that program based on [her] disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). For her Rehabilitation Act claim, Santa Maria must also allege that Stritch receives federal funding, *see Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (noting the federal funding requirement distinguishes the ADA from the Rehabilitation Act), and that her disability was "the *sole* reason for the alleged discriminatory action; this contrasts with the ADA, which requires only that the plaintiff's disability be *a* reason for the challenged action," *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021).

9

Stritch argues that Santa Maria insufficiently pleaded that (1) she was otherwise qualified, and (2) that Stritch excluded her because of her disability. The Court focuses its review on these elements.

### A. Santa Maria's Qualifications

"In the context of a university, a person is 'otherwise qualified' if she is able to meet all of the program's requirements in spite of her disability, with or without a reasonable accommodation." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). Although academic institutions such as Stritch enjoy "broad discretion" to decide if students are qualified to participate in their program, *id.*, "academic decisions that are discriminatory are not legitimate," *Novak*, 777 F.3d at 975–76; *see also Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998) ("Congress did not intend that institutions of higher learning enjoy immunity from the Nation's antidiscrimination statutes.").

Santa Maria's complaint alleges that before her first dismissal from Stritch, she had requested and obtained "educational modifications including extensions of time to complete exams and excused absences so that [she] could address her medical needs." Doc. 1 ¶ 30. In spite of these accommodations, Santa Maria failed her pediatrics exam several times, leading to her dismissal from the school. Santa Maria states that she appealed and that Stritch reversed her dismissal, attaching the conditions to her reinstatement of which she complains. Following her reinstatement, Santa Maria passed her psychiatry elective internship "with honors." *Id.* ¶ 85. Santa Maria also alleges that, prior to receiving her failing score on her first Step 1 attempt, she was on track to complete her required fourth-year studies and to graduate from medical school. She further alleges that she was in compliance with all other requirements that Stritch's student handbook places on medical students.

Stritch argues that the complaint as pleaded alleges that Santa Maria received all accommodations she requested from the school between 2019 and 2021, but that she nevertheless failed to academically succeed, showing that she is unqualified for its program. According to Stritch, these failures, combined with Santa Maria's failure to pass Step 1 on her first attempt, show that she is not an otherwise qualified candidate for its medical school.[5] In response, Santa Maria argues that her pre-reinstatement failures are irrelevant because Stritch already reinstated her as a student, and that her academic success in her clinics and non-Step exams since reinstatement demonstrates that she is qualified. Santa Maria also disputes Stritch's reliance on her failure to pass Step 1 on the first attempt, which she contends is a discriminatory condition on her reinstatement.

To start, the Court agrees that Stritch's offer of reenrollment to Santa Maria after her first dismissal negates its argument that she was unqualified due to her failed pediatric clerkship exams. Had Stritch never given Santa Maria the opportunity to reenroll, it likely would have been able to successfully argue that she was unqualified given that Stritch gave her the requested accommodations and she still failed. *See Khan*, 879 F.3d at 844 (upholding summary judgment against medical student who "failed approximately seven of nine exams in pharmacology, three out of five exams in osteopathic manipulative medicine, and three out of six exams in Topics in Medicine"); *Novak*, 777 F.3d at 976 (upholding summary judgment against doctoral student who "failed to pass his preliminary examination—a prerequisite for further participation in the

---

[5] Additionally, Stritch contends that it dismissed Santa Maria from its program because of her academic performance, not because of her disability, and that educational institutions often require readmitted students to abide by stricter conditions. However, at this early stage of the case, the Court cannot consider Stritch's rebuttal facts, affirmative arguments, and comparisons to general practices of other educational institutions. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion.").

program"). But instead, Stritch allowed Santa Maria to continue her studies. Presumably, Stritch would never have offered Santa Maria readmission if the school felt that her failures rendered her genuinely unqualified to be a medical student. The Court also agrees with Santa Maria that Stritch's reliance on Santa Maria's failure to pass Step 1 on her first attempt as evidence that she is unqualified is misguided. Ordinarily, Stritch offers students three opportunities to pass the Step 1 exam. This suggests that Stritch does not believe that failing this exam once makes a medical student *ipso facto* unqualified to continue their studies. And although Stritch argues that it may place more stringent conditions on students that it academically dismisses and subsequently allows to reenroll, *see, e.g.*, *Morris v. Yale Univ. Sch. of Med.*, 477 F. Supp. 2d 450, 460 (D. Conn. 2007) (no racial discrimination when school imposed stricter Step 1-related conditions on Black student who had previously failed Step 1 and other medical school coursework), those tighter requirements cannot discriminate against a student on the basis of a disability, *see Novak*, 777 F.3d at 974 (ADA and Rehabilitation Act prohibit discrimination on the basis of a disability)—Santa Maria alleges they were, which the Court must accept at the motion to dismiss stage, *see Kubiak*, 810 F.3d at 480–81 (court must accept all well-pleaded allegations as true in motion to dismiss posture).

  Rather, the Court finds that Santa Maria's complaint plausibly alleges that she is otherwise qualified to be a student at Stritch. Her post-reenrollment history bears this out. After obtaining accommodations from Stritch to receive extra time during exams, she passed her psychiatry clerkship "with honors." Doc. 1 ¶ 85. Santa Maria also alleges that when Stritch dismissed her for a second time, she was already making progress with her fourth-year coursework, was on track to graduate from the program at the end of the year, and was in compliance with all standard requirements that Stritch had for its students as well as the special

conditions Stritch placed on her reenrollment—save her failure to pass Step 1 on her first attempt. These allegations suggest that, for the relevant time period, when Santa Maria received accommodations from her program, she achieved academic success.[6] Thus, she has plausibly stated that she is qualified for Stritch's program. *See Khan*, 879 F.3d at 844 ("In the context of a university, a person is 'otherwise qualified' if she is able to meet all of the program's requirements in spite of her disability, with or without a reasonable accommodation.").

### B. Discrimination on the Basis of the Disability

Both the Rehabilitation Act and the ADA prohibit discrimination against disabled individuals "'by reason of' the disability, or 'on the basis of' the disability." *Id.*; *see also* 42 U.S.C. § 12182; 29 U.S.C. § 794. "[T]he statutory language in both the Rehabilitation Act and the ADA requires proof of causation." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018). A plaintiff can plead causation by alleging "that, 'but for' [her] disability, [s]he would have been able to access the services or benefits desired." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006).

Stritch briefly argues that Santa Maria failed to plausibly allege that her dismissal was based on Stritch's discriminatory motive, claiming that she "allege[d] (i) she had a disability, (ii) she received accommodations, and (iii) she nevertheless failed to meet the requirements for continued enrollment set forth in the agreement for readmission." Doc. 18 at 8. This argument does not withstand a cursory glance at Santa Maria's complaint, which plausibly states that Stritch's alleged discrimination was due to her disabilities. Stritch's acknowledgement that Santa Maria achieved "success during [her] first two years at Stritch and felt that, based on its

---

[6] Indeed, part of Santa Maria's complaint focuses on NBME's failure to provide her with additional time to take Step 1, which she alleges "was particularly damaging" to her ability to pass the exam and satisfy this condition of reenrollment. *See* Doc. 1 ¶¶ 87–103.

review, [Santa Maria]'s 'problems [leading to her initial dismissal] were directly due to [her] very serious family and health issues'" is dispositive. Doc 1 ¶ 68; *see also* Doc. 18-3 at 2 ("The [SAB] felt that your appeal should be approved and the dismissal reversed. In reaching this decision, the committee considered many factors, including your medical school performance in your M1 and M2 years. The SAB felt that your problems were directly due to your very serious family and health issues. The SAB also felt that you were very serious about listening to and working with your healthcare team to improve your overall health and decision making."). Taking this in the light most favorable to Santa Maria, the SAB's statement demonstrates Stritch's understanding that Santa Maria was a well-performing student except for when her disabilities caused her challenges. Under this reasoning, if Santa Maria had no disability, then she never would have failed her pediatrics exams, Stritch would never have offered her reenrollment, and Santa Maria would never have needed to pass Step 1 on her first attempt or face dismissal from medical school. *Cf. Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 849 (7th Cir. 1999) (but-for discrimination found when witness "stated that Mr. Washington's learning disability caused him to fail at school . . . and, without the learning disability, [he] would be fully capable of performing in high school"). As such, Santa Maria plausibly alleges that the discriminatory condition was due to her disability.

The Court finds that Santa Maria has sufficiently pleaded that Stritch discriminated against her because of her disability and, accordingly, that she sufficiently pleaded claims for discrimination under the ADA and the Rehabilitation Act (Counts I and III).

### III. Santa Maria's Retaliation Claims

Santa Maria also brings retaliation claims under the ADA and the Rehabilitation Act. A plaintiff claiming retaliation must allege "(1) a statutorily protected activity; (2) an adverse

14

action; and (3) a causal connection between the two." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Stritch did not move to dismiss these specific claims in its opening brief, and Santa Maria argues that Stritch's failure to object to the sufficiency of her allegations alleging retaliation means it forfeited its opportunity to do so. Stritch states in its reply brief that "Plaintiff is correct that Defendant did not specifically move to dismiss Plaintiff's ADA and Rehab[ilitation] Act retaliation claims (Counts II and IV), however, Defendant did move to dismiss Plaintiff's retaliation claims as impermissible 'shotgun' pleading." Doc 38 at 4 n.2.

By Stritch's own admission, it waived any argument that her complaint failed to plausibly allege these theories of relief. *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (finding waived an argument not made because "it is not this court's responsibility to research and construct the parties' arguments."). Therefore, Santa Maria's retaliation claims may proceed (Counts II and IV).[7]

## IV. Breach of Contract

Santa Maria's first state law claim is for breach of contract between her and Stritch. To state a breach of contract claim, Santa Maria must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022) (citing *Babbit Muns., Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, ¶ 27). Although Santa Maria focuses much of her argument on establishing that an implied-in-fact contract exists, Stritch freely concedes (and Santa Maria does not dispute) that her readmission to Stritch and the accompanying supplemental terms constitute a written agreement. Stritch only

---

[7] If Santa Maria chooses to file a second amended complaint, she should clarify which actions she believes constitute "statutorily protected activity," as required to state a claim for retaliation under the ADA and the Rehabilitation Act. *Burks*, 464 F.3d at 758.

challenges whether Santa Maria plausibly alleged that she substantially performed her obligations under the contract, so the Court focuses on that element alone.

Stritch's argument immediately dead ends. It hinges entirely on Santa Maria's failure to adhere to the provision requiring her to pass Step 1 on her first attempt: in other words, Stritch points to the very same "one strike and you're out" provision that is at the heart of this lawsuit. Because the Court accepts Santa Maria's allegations at the pleading stage that this provision was discriminatory, Stritch cannot use it to argue that she failed to perform an obligation it could not require her to fulfill. *See U.S. Nursing Corp. v. Saint Joseph Med. Ctr.*, 39 F.3d 790, 792 (7th Cir. 1994) ("Contracts based on legitimate subject matter that are performed in an unlawful manner are also unenforceable in certain circumstances."); *Superior Bedding Co. v. Serta Assocs., Inc.*, 353 F. Supp. 1143, 1147 (N.D. Ill. 1972) ("[W]here a contract is only partially illegal . . . the illegal clause can be severed from the remainder of the contract, [and] the remainder of the contract will be enforced.").

Accordingly, the Court finds that Santa Maria's complaint states a claim for breach of contract (Count V).

## V.     IIED

Stritch also challenges whether Santa Maria plausibly alleged an IIED claim. To state a claim for IIED, Santa Maria must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ.*, 416 F.3d 571, 579 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). However, when "pleading an IIED claim, a litigant cannot rely on boilerplate allegations that the Defendant intended to inflict emotional

distress and actually did so." *Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *12 (N.D. Ill. Aug. 2, 2021). The predicate conduct for an IIED claim must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs v. Chase Home Finance*, 2016 IL 120041, ¶ 51 (citing Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)). It is not enough that a defendant "intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.*

Stritch argues Santa Maria did not plead that Stritch's actions were as "extreme and outrageous" as necessary to state a claim for IIED. In response, Santa Maria points to the following actions as rising to the necessary level of "extreme and outrageous" conduct that satisfies IIED's pleading standard:

> knowing full well that Plaintiff, although disabled, was capable of honors work with reasonable accommodation, intentionally placed discriminatory conditions upon her readmission, forced her to take the Step 1 examination in such a manner as to trigger her disabilities, enforced a temporal requirement that [Stritch] knew negated a modification provided by the NBME, ignored Plaintiff's objections and pleas for help, and stood back and watched Plaintiff fail despite the fact that its own Director of Residency Wellness Program had been advocating on Plaintiff's behalf for years.

Doc. 34 at 11–12. But none of these allegations clear the high bar that "extreme and outrageous" demands. *Schweihs*, 2016 IL 120041, ¶ 51. Stritch's alleged actions, if proven true, are far from accommodating of Santa Maria's disabilities and the Court does not doubt that they have caused her significant stress and anguish. But they do not "go beyond all possible bounds of decency." *Id.*; *see also Totten*, 2021 WL 3290926, at *12 (no IIED where administration failed to take steps to protect plaintiff from other students who harassed her); *Zimmeck v. Marshall Univ. Bd. of*

17

*Governors*, No. 13 C 14743, 2013 WL 5700591, at *9 (S.D.W. Va. Oct. 18, 2013) ("However, Defendants' actions occurred within the confines of an established system for student dismissals, albeit one which she claims was unfair and improperly used. . . . Although Plaintiff disagrees with her dismissal from the school, none of Defendants' actions have the hallmark of unbearable outrageousness. The anger Plaintiff feels is to be expected from any student who is dismissed from a university against his or her will."); *cf. Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 275 (2003) (finding that more than a decade of verbal insults and humiliations, deprivation of the freedom of movement, and a pattern of physical abuse were "extreme and outrageous"); *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1272 (N.D. Ill. 2021) (finding "[d]efendants engaged in extreme and outrageous conduct by fabricating false evidence, maliciously prosecuting [plaintiff], and withholding exculpatory and impeaching evidence from [plaintiff]"). That Santa Maria fails to cite a single case supporting her arguments against dismissal highlights the inadequacy of her pleading with respect to this claim. Therefore, the Court dismisses Santa Maria's IIED claim (Count VI) without prejudice. Santa Maria may replead her IIED claim if she is able to do so.

**VI.    Negligence**

Finally, Stritch challenges the sufficiency of Santa Maria's negligence claim, which she pleads as an alternative to her now-dismissed IIED claim. To state a cause of action for negligence, Santa Maria must allege that Stritch owed her a duty, that Stritch breached that duty, and that she suffered an injury that proximately resulted from the breach. *See, e.g.*, *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 21. In relevant part, Santa Maria alleges that, "as described more fully [earlier in this complaint], Stritch owed [her] a duty to ensure and safeguard

18

her rights in accordance with its policies and procedures." Doc. 1 ¶ 158. She also alleges that Stritch breached that duty and caused her damages.

Stritch argues that Santa Maria did not plausibly allege that it owed her a legal duty (or that she suffered a breach of any duty that caused damages) because universities generally do not owe a duty to students to enforce their policies in any particular manner. Santa Maria agrees with this proposition, to an extent. Doc. 34 at 12 ("Defendant is correct that, generally speaking, a University owes no legal duty to its students[.]"). However, she argues that the contract that she plausibly alleged Stritch breached likewise imposed a duty on the school to adhere to its policies, and that Stritch's breach of contract also gives rise to a negligence claim. In turn, Stritch argues that because Santa Maria's negligence claim essentially duplicates her breach of contract claim, the Court must dismiss it as duplicative pleading.

Santa Maria's negligence claim generically points to the same conduct that underlies her breach of contract claim. *See* Doc. 1 ¶ 158. Her arguments in favor of her negligence claim likewise boil down to asserting that if Stritch breached its contract with her, then it also committed negligence. In other words, she is "alleg[ing] the same facts and the same injury" for both her breach of contract and negligence claims. *Beringer v. Standard Parking O'HARE Joint Venture*, No. 07 C 5027, 2008 WL 4890501, at *4 (N.D. Ill. Nov. 12, 2008). This constitutes duplicative pleading, so the Court dismisses this claim without prejudice. *See id.* ("As both counts involve the same operative facts, the same injury, and require proof of essentially the same elements, the court concludes that the two counts are duplicative.").

19

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Stritch's motion to dismiss Santa Maria's complaint [17]. The Court dismisses Santa Maria's IIED and negligence claims (Counts VI and VII) without prejudice.


Dated: September 9, 2024                                              _____
                                                                      SARA L. ELLIS
                                                                      United States District Judge